IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

ALLSTATE INSURANCE COMPANY,           )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )          Case No.  CIV-04-535-L
                                      )
LESLEY SAVAGE,[1] individually;       )
LESLEY SAVAGE, as Wife and            )
Personal Representative of the        )
Estate of Timothy James Moore,        )
Deceased; SANDRA BURTON,              )
individually; DAVID TARRANCE          )
BURTON, individually and by           )
and through his Legal Guardian,       )
SANDRA BURTON,                        )
                                      )
          Defendants.                 )

## O R D E R

This declaratory judgment action brought by plaintiff Allstate Insurance

Company ("Allstate") arises from a February 24, 2004 shooting on Highway 9 in

Norman, Oklahoma, that left Timothy James Moore dead.  David Burton was later

arrested and criminally charged in connection with the shooting.[2]  At the time of

the fatal shooting, there was in force a Deluxe Homeowners Policy of insurance

("the policy") issued by Allstate to David and Sandra Burton.  The policy provided

---

[1]       The court adopts the stipulated spelling of Lesley Savage's name as contained in the proposed Final Pretrial Report filed herein [Doc. No. 51].

[2]       On May 25, 2005, David Burton was convicted after trial to a jury of Manslaughter in the First Degree, after having been found mentally competent to stand trial.  State of Oklahoma v. David Tarrance Burton, No. CF-2004-236, In the District Court in and for Cleveland County, Oklahoma.  (Docket available at www.oscn.net.)

Family Liability Protection for damages which an insured person becomes legally obligated to pay because of accidental bodily injury.  According to the Complaint, on March 8, 2004, Moore's estate and his widow, Lesley Savage, filed a civil lawsuit against Burton to recover damages for bodily injuries, wrongful death, medical and other damages in excess of $75,000.00.  Demand has been made for Allstate to indemnify and defend Burton for the shooting incident.  Allstate seeks a declaratory judgment to determine and declare that Allstate has no obligation to defendants to pay any sum on behalf of David Burton and/or Sandra Burton to Moore's estate and/or widow, Lesley Savage, or to defend the Burtons in the civil litigation under the policy.

This matter is before the court on Allstate's Motion for Summary Judgment. Defendant Lesley Savage, individually and as wife and personal representative of the Estate of Timothy James Moore, deceased, ("Savage") filed a Response to Allstate's Motion for Summary Judgment.  The court has reviewed Savage's response brief and agrees with the observation of Allstate in its reply that Savage's response fails to specifically controvert the statement of material fact as set forth by Allstate in its motion.  Furthermore, Savage's response relies upon irrelevant and inapplicable case law regarding uninsured motorist ("UM") coverage.  The insurance policy at issue in this declaratory judgment action is the homeowners policy issued to David and Sandra Burton.  Savage's brief and its

references to UM law clearly fail to address the legal issues involved in this proceeding.  This court's Local Rule LCvR56.1(c) provides:

> The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist.  Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed.  All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

Savage's brief in opposition to Allstate's motion for summary judgment does not meaningfully relate to Allstate's brief, Allstate's statement of undisputed facts, or the issues before this court.  Accordingly, the court determines as a matter of law that Allstate is entitled to summary judgment as to defendant Lesley Savage, individually and as wife and personal representative of the Estate of Timothy James Moore, deceased and Allstate's Motion for Summary Judgment is granted as to this defendant.

Sandra Burton, individually, and as legal guardian for David Terrance Burton ("the Burtons") also filed a Response to Allstate's Motion for Summary Judgment.[3]  Not only do the Burtons claim that there are numerous material factual disputes precluding summary judgment in this matter, the Burtons also

---

[3]      The Response is erroneously docketed as a Motion for Summary Judgment [Doc. No. 39], however, it does contain an alternative Motion for a Stay or Continuance, pursuant to Fed. R. Civ. P. 56(f).

have submitted an affidavit of counsel pursuant to Fed. R. Civ. P. 56(f) asserting an inability to fully and properly respond to the dispositive motion.  The response states that David Burton is not able to respond to certain uncontroverted facts without waiving his Fifth Amendment right against self-incrimination.  The Burtons request a stay and/or continuance pending further discovery and the conclusion of David Burton's criminal trial.

The court has carefully reviewed the Burtons' brief, as well as the exhibits submitted by the parties, including the Rule 56(f) affidavit.  Based upon this review, the court determines that the material facts are not in dispute and that further discovery is not necessary or appropriate.  While the Burtons' brief appears to identify material factual disputes, upon closer inspection the court concludes that the Burtons have not disputed the properly submitted summary judgment evidence that demonstrates that Allstate is entitled to judgment as a matter of law.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law."  Fed. R. Civ. P. 56(c); *accord* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509, 91 L. Ed. 2d 202 (1986).  The moving party bears the initial burden of showing that there is an absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,

323, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553; Applied Genetics Int'l. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The non-moving party must point to specific facts, "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves," to avoid summary judgment.  Celotex, 477 U.S. at 324.  Such evidence includes reference to affidavits, deposition transcripts, or specific exhibits.  Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), cert. denied, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).  The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court.  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).  Although the district court has the discretion to go beyond the referenced portions of the supporting material, it is not required to do so.  Id.

In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.  Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir. 1988).  The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party.  Allegations alone will not defeat summary judgment.  Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526, 530 (10th Cir. 1994).

Summary judgment is only appropriate if "there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson,  477 U.S. at 250.  To defeat a summary judgment motion, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 585-86; Anderson, 477 U.S. at 250 ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. [Citation omitted.] If the evidence is merely colorable, [citation omitted], or is not significantly probative, summary judgment may be granted.")

It is undisputed that David Burton and Sandra Burton are the named insureds on the policy, which was in effect on February 25, 2004.  It is also not in dispute that Lesley Savage, Timothy Moore's widow, individually and as the representative of his estate, filed a civil lawsuit in Cleveland County, State of

Oklahoma, Case No. CJ-04-387, against Burton to recover damages for bodily

injuries, wrongful death, medical and other damages in excess of $75,000.00.

After the Cleveland County lawsuit was filed, the Burtons made demand upon

Allstate to indemnify and defend David Burton in the civil lawsuit under the terms

of the policy.  It is undisputed that the policy expressly provides:

> Subject to the terms, conditions and limitations of this policy, Allstate
> will pay damages which an insured person becomes legally obligated to
> pay because of bodily injury or property damage arising from an
> occurrence to which this policy applies, and covered by this part of the
> policy.
>
> *        *        *
>
> We do not cover any bodily injury or property damage intended by,
> or which may reasonably be expected to result from the intentional or
> criminal acts or omissions of, any insured person.  This exclusion applies
> even if:
>> a)    such insured person lacks the mental capacity to govern his or
>>         her conduct;
>> b)    such bodily injury or property damage is of a different kind or
>>         degree than intended or reasonably expected; or
>> c)    such bodily injury or property damage is sustained by a
>>         different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such insured
> person is actually charged with, or convicted of a crime.

Allstate argues that the policy at issue only provides coverage where

damage results from an "occurrence to which the policy applies."  The policy

defines "occurrence" as "an accident, including continuous or repeated exposure

to substantially the same general harmful conditions during the policy period,

resulting in bodily injury or property damage."  (Policy, Exhibit 1 to Allstate's

Motion for Summary Judgment.)  Relying primarily upon the Tenth Circuit's

decision in Farmers Alliance Mut. Ins. Co. v. Salazar, 77 F.3d 1291, 1297 (10th

Cir. 1996), Allstate argues that the court should interpret an "accident" as "an

event from an unknown cause, or an unexpected event from a known cause.  An

unusual event and unexpected result, attending the performance of a usual or

necessary act."  According to Allstate, the undisputed facts demonstrate that the

shooting of Timothy Moore was not an accident and is thus not a covered

occurrence under the policy.

In support of its motion for summary judgment, Allstate submitted the

affidavit of Zachary T. Finley.  (Exhibit 3 to Allstate's Motion for Summary

Judgment.)  The Finley Affidavit states the following:

1.  I am over the age of 18 years and reside in Oklahoma.
2.  On February 25, 2004, I was driving an Impala eastbound on
    Highway 9 in Norman.  Caleb J. Williams was riding in the front,
    passenger seat of my car.  I was traveling behind a Cadillac, which I
    later learned was driven by Timothy Moore.
3.  Near the "Perfect Swing" activity center, I saw a minivan ahead of
    me swerve aggressively toward Moore's Cadillac.  The Cadillac
    braked and the van, which I later found out was driven by David
    Burton, pulled in front of Moore's Cadillac.
4.  At the traffic light at the intersection of 24th Street and Highway 9, I
    pulled into the left turn lane.  I passed Moore's car.  I also passed
    Burton's van and stopped at a diagonal angle from the front, driver-
    side of it.
5.  I saw Burton get out of his van and walk aggressively toward
    Moore's car where he instantly started punching Moore through the

open window of his car.  It appeared as if Moore was trying to get away from Burton's punches.

6.    After he punched Moore several times, I saw Burton stick his head into the window of the car.  It then looked like he was knocked back out of the window.

7.    After being knocked back, I saw Burton pull out a small, silver gun from his pocket.  I believe he was approximately three (3) feet away from the car when he pulled out the gun.

8.    I then saw Burton walk to the car with the gun in his hand and stick his arm and gun through the window.  I heard a "pop" and thought that it sounded like a gunshot.

9.    I did not see anything that indicated to me that the shooting by Burton was an accident or anything but intentional.  Burton got out of his car and started the altercation by intentionally punching Moore. Moore never got out of his car to confront Burton.  Further, I saw Burton purposely pull the gun out and walk straight to the car with it. He intentionally stuck his arm and gun into the car, with it pointed at Moore, and fired.

10.   After the shooting, Burton then stepped away from the car, put the gun away, and casually walked back to his vehicle.  He got in his van and drove off with the pace of traffic.

11.   From the moment that Burton got out of his van until he returned to it, the entire incident lasted about thirty (30) seconds.

In support of its motion for summary judgment, Allstate also submitted the

affidavit of Doug Greeson.  (Exhibit 4 to Allstate's Motion for Summary

Judgment.)  The Greeson Affidavit states the following:

1.    I am over the age of 18 years and I am a resident of Oklahoma.

2.    On February 25, 2004, I was driving a pick-up truck traveling eastbound on Highway 9 in Norman.  I was behind a car, but I do not remember what type of automobile it was.  In front of the car I was following, I saw a Cadillac, which I later found out was driven by Timothy Moore.

3.  I saw a minivan up ahead swerve suddenly as I approached the intersection of Highway 9 and 24th Street. I later found out that David Burton was driving the minivan.

4.  At the intersection, the car in front of me entered the left turn lane. I pulled up and stopped my vehicle behind Moore's Cadillac. The minivan was in front of Moore's car.

5.  I saw Burton exit his van and walk toward Moore's vehicle. He was visibly upset and agitated. He walked to the Cadillac and immediately started punching Moore through the open window of his car.

6.  I observed Moore lean away from the window and move toward the passenger seat. Burton then moved closer in toward the window.

7.  Suddenly, Burton recoiled from the window as if he had been knocked backward.

8.  After being knocked back, Burton walked to the car again and moved very close to the window. At this point, I saw Moore fall back into the passenger seat of the vehicle.

9.  Burton then stepped away from the window and slightly back toward the rear of the Cadillac. He turned briefly toward me, at which point, I saw the silver barrel of a gun in his hand, which he was pointing in front of him and holding close to his body. Burton made no attempt to hide the firearm.

10. I did not observe anything that indicated Burton's actions were accidental or unintentional. Instead, Burton deliberately attacked Moore in his car.

11. Burton then turned away from me and walked casually back to his vehicle. He got in his van and drove off with the pace of traffic.

12. I exited my vehicle and called 9-1-1 to report the tag number on Burton's van.

13. I estimate that the entire incident lasted about thirty (30) seconds from the moment that Burton exited his van until he returned to it.

Allstate's Statement of Uncontroverted Material Facts also relies on an

Affidavit for Arrest Warrant (Exhibit 2 to Allstate's Motion for Summary Judgment)

and the Affidavit of Detective Casey Caudle of the Norman Police Department

(Exhibit 5 to Allstate's Motion for Summary Judgment).  The Burtons have

objected to Allstate's use of the Affidavit for Arrest Warrant at the summary

judgment stage on the grounds that the Affidavit for Arrest Warrant is based

solely on hearsay and is, therefore, inadmissible.  The Burtons also object to

certain portions of Detective Caudle's Affidavit on the grounds of hearsay.

Without ruling on the Burtons' hearsay objections, and in construing the facts in

the light most favorable to the Burtons at the summary judgment stage, the court

determines that consideration of the Affidavit for Arrest Warrant and Detective

Caudle's Affidavit is not necessary for the court to enter summary judgment and

these affidavits have not been considered by the court for any purpose.

The Burtons have not called into question the legal authorities relied upon

by Allstate in seeking summary judgment based on the intentional and criminal

acts exclusion of the policy, set forth above.  However, the Burtons argue that

Allstate's summary judgment motion should be denied on the grounds that there

are numerous material factual disputes.  According to the Burtons, the Finley and

Greeson affidavits are insufficient to support the grant of summary judgment.

The court has carefully reviewed the basis for the Burtons' arguments

regarding the Finley and Greeson Affidavits.  It is clear to the court from its review

that the Burtons' argument is that the facts asserted in the Finley and Greeson

Affidavits are "in dispute" because of the Burtons' belief that Finley and Greeson

were unable to make a positive identification of David Burton when they were interviewed by the Norman Police Department on the day of the shooting and possibly during testimony at the preliminary hearing.  Thus, the Burtons assert that there is a question of fact over whether Finley and/or Greeson can identify David Burton as the man who shot Timothy Moore.  The court finds that this "misidentification" issue does not prevent summary judgment.

If the court were to construe the facts regarding the identification of David Burton by the eyewitnesses in the light most favorable to the Burtons, the court could find that Finley and/or Greeson wrongly identified David Burton as the shooter of Timothy Moore.  However, assuming it was not Burton who shot Moore, then it is clear that the Burtons' homeowner's policy would not provide coverage for the shooting of Mr. Moore by another person.  The policy was issued to the Burtons.  Thus, even assuming that the facts suggest the shooter was another person, Allstate would clearly be entitled to summary judgment as there could be no coverage under the Burtons' policy for such an incident.

Significantly, other than the "misidentification" issue, the Burtons do not dispute the salient facts surrounding the shooting as described by Finley and Greeson.  Thus, the court finds it appropriate to deem these facts as admitted due to the Burtons' failure to controvert them.  These facts establish that the cause of Mr. Moore's fatal injury was the shooting.  Finley testified that he "saw Burton get out of his van and walk aggressively toward Moore's car where he

12

instantly started punching Moore through the open window of the car." (Finley Affidavit, ¶ 5.) Finley stated he "saw Burton pull out a small, silver gun from his pocket." (Id., ¶ 7.) He then "saw Burton walk to his car with the gun in his hand and stick his arm and gun through the window." (Id., ¶8.) Finley said he "saw Burton purposely pull the gun out and walk straight to the car with it. He intentionally stuck his arm and gun into the car, with it pointed at Moore, and fired." (Id., ¶ 9.) Greeson testified that he "saw Burton exit his van and walk toward Moore's vehicle. He was visibly upset and agitated. He walked to the Cadillac and immediately started punching Moore through the open window of his car." (Greeson Affidavit, ¶ 5.) Greeson saw Burton move very close to the car window and he "saw Moore fall back into the passenger seat of the vehicle." (Id., ¶ 8.) Greeson saw the gun in Burton's hand. (Id., ¶ 9.). The eyewitnesses testified that they saw Burton, visibly upset and agitated, get out of his vehicle and walk directly to Mr. Moore's car where he proceeded to assault and shoot Mr. Moore. These undisputed facts establish that the fatal shooting of Timothy Moore was intentional and not accidental.

The court rejects the Burtons' argument that there is a factual dispute regarding this issue. In their Response to Allstate's Motion for Summary Judgment, the Burtons state as an "Additional Controverted Fact" that the shooting was accidental and not intentional. As support for this contention, the Burtons rely on the Affidavit of Melissa Brook Chapman (*See* Doc. 40 for full

Affidavit).  This version of the Chapman Affidavit, which is dated November 22,

2004, states the following:

1. My name is Melissa Brook Chapman.
2. I am over the age of 18 and reside in Oklahoma.
3. On February 24, 2004 I had come to the intersection stoplight at SE 24th and Highway 9.
4. I heard honking and noticed a white male out of his car walking back towards the car behind him.
5. I thought at the time that the white male was going to assist the other driver.
6. I observed the white male with his hands inside the other car for 2-3 minutes.
7. I believe the two men were struggling.
8. While the two men were struggling, I heard what sounded like a car backfiring and at that time the white male walked fast back to his car.
9. After the truck in front of me pulled to the left, I drove forward.  At that time I did not see a driver in the car that was stopped in front of me.  There was a man (who I now know to be the deceased Mr. Timothy Moore) laying over into the passenger side of the car with his head leaning between the door and the headrest.
10. I then called 911 and pulled off the road.
11. I got out of my car and walked back to Mr. Moore's car.
12. My first thoughts were that the man in the car had a stroke or heart attack and the other man had gone back to help him.
13. When I got out of my car and over to Mr. Moore's car I was still on the phone with 911.
14. I leaned into the car, not touching anything, and saw that Mr. Moore was bleeding from the left rib area.
15. I then realized that the white male had not been helping Mr. Moore, they had been struggling.
16. From what I saw, it did not look like the man intentionally shot Mr. Moore.
17. The gun went off while the two men were struggling or fighting.

18.    I was unable to make a positive identification of the white male I saw at the scene fighting with Mr. Moore.

Focusing on the statement in paragraph 16 of the November 22, 2004 Chapman Affidavit, the Burtons argue that if the shooting was accidental the criminal acts exclusion of the policy would not apply to prevent coverage. However, as pointed out by Allstate, Ms. Chapman has executed a second affidavit, dated December 13, 2004, in which she states that her "affidavit of November 22, 2004, must be read in conjunction with my police statement (attached as Exh. "A") and with this affidavit."[4]   The December 13, 2004 Affidavit states that Ms. Chapman "could not see into the victim's car until after the shooting" (¶ 4) and that she "did not see [the shooter] pull a gun or see the shooting take place." (¶ 9.)  Paragraph 10 of the December 13, 2004 Affidavit states: "I did not see anything that made the shooting look intentional or accidental."  The Burtons have come forward with no evidence to contradict Chapman's sworn testimony that she did not see the shooting take place.  Under the circumstances, the court finds that Chapman's November 22, 2004 Affidavit does not create a material factual dispute regarding whether the shooting was intentional or accidental.  Therefore, the court rejects the Burtons' argument that a factual issue prevents summary judgment in favor of Allstate.

---

[4]       Chapman's December 13, 2004 Affidavit and the attached police statement are Exhibit 9 to Allstate's Response to the Burton's Motion for Stay which was included in their Response to Allstate's Motion for Summary Judgment.

The Burtons also argue that David Burton's mental condition is a factor in determining whether there is coverage under the policy.  They assert that David Burton has suffered from mental illness most of his life, is a diagnosed paranoid schizophrenic, and has undergone treatment and medication for many years. However, the court agrees with Allstate that the clear and unambiguous language of the intentional and criminal acts exclusion of the homeowner's policy, set forth above, specifically provides that the exclusion applies even if the insured person lacks the mental capacity to govern his or her conduct.  The policy language is clear that the intentional shooting of Mr. Moore is excluded from coverage regardless of David Burton's mental state at the time.  Therefore, even if the court accepts the Burtons' facts as true regarding David Burton's mental condition and history, these facts do not provide a basis for denying Allstate's motion for summary judgment as a matter of law.

The Burtons claim that, upon advice from his criminal defense attorney, David Burton has chosen not to "comment" on whether the shooting was intentional or accidental, claiming that he cannot do so at this time without waiving his Fifth Amendment right against self-incrimination.  However, the court finds that this decision by David Burton does not preclude the entry of summary judgment.  It has been held that a party may not avoid his burden on a motion for summary judgment by standing on his Fifth Amendment privilege. National Reinsurance Corporation v. Market Risk Management, Inc., 1992 WL 190694, *2

(D. Kan. 1992), *citing* U.S. v. $64,765.00 in U.S. Currency, 786 F. Supp. 906, 913

(D.Or. 1991).  As noted by the court in National Reinsurance, 1992 WL 190694 at

*2, footnote 3, *quoting* United States v. Rylander, 460 U.S. 752, 758 (1983), "The

Fifth Amendment privilege cannot be converted into a 'sword whereby a claimant

asserting the privilege would be freed from adducing proof in support of a burden

which would otherwise have been his.'" To the extent the Burtons suggest that

only David Burton's testimony could shed light on this issue, the court rejects this

notion.  *See* Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d*, §

2018 ("In some cases if a party claims the privilege and does not give his or her

own evidence there will be nothing to support his or her view of the case and an

adverse finding or even a directed verdict or grant of summary judgment will be

proper. [Footnote omitted.]  But it does not necessarily follow that a party will be

unable to prove his or her case or rebut the opponent's case without his or her

own testimony.")  Mindful of these authorities, the court determines that David

Burton's claim of Fifth Amendment privilege does not prevent summary judgment

where he has failed to meet his burden of coming forward with sufficient evidence

to overcome Allstate's supported motion for summary judgment.

Nor does the court find that the Burtons have justified their request for a

stay or continuance in this matter under Fed. R. Civ. P. 56(f).  The Burtons claim

to need the stay to allow them "an opportunity to provide a full and adequate

defense of the allegations Allstate has made against David Burton." (Burtons'

Response to Allstate's Motion for Summary Judgment, p. 21.)

Fed. R. Civ. P. 56(f) provides:

> **When Affidavits are Unavailable.**  Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1522

(10th Cir. 1992), the Tenth Circuit stated:

> . . . Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented.  10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2740 at 530 (1983).  This includes identifying the probable facts not available and what steps have been taken to obtain those facts.  *See 6 Moore's Federal Practice* ¶ 56.24.  In this circuit, the nonmovant also must explain "how additional time will enable him to rebut movant's allegations of no genuine issue of fact."  *See* Meyer v. Dans un Jardin, S.A., 816 F.2d 533, 537 (10th Cir. 1987); Patty Precision [v. Brown & Sharpe Mfg Co., 742 F.2d 1260,] 1264 [(10th Cir. 1984)].

The court has carefully reviewed the affidavits of the Burtons' counsel and

David Burton's criminal defense attorney.  The court has also considered the

procedural history of this case, including the course of discovery.  Upon thorough

review, the court finds that a continuance or stay of this matter is not justified and

that entry of summary judgment in favor of Allstate need not be delayed.  The

Affidavit of D. Todd Riddles, attorney for the Burtons (Exhibit 1 to the Burtons'

18

Response to Allstate's Motion for Summary Judgment), purports to provide at least four reasons why a continuance is required.

First, the Riddles Affidavit states that David Burton cannot testify in this civil declaratory judgment action without waiving his Fifth Amendment right against self-incrimination. (¶ 3.)  As addressed by the court above, however, the assertion of the Fifth Amendment privilege does not render summary judgment inappropriate when a party fails to come forward with sufficient evidence to satisfy its burden at the summary judgment stage.

Second, the Riddles Affidavit states that in order to properly respond to Allstate's motion, the "Burtons must depose Allstate's Rule 30(b)(6) most knowledgeable person."  (¶ 6.)  The court rejects this contention.  The Burtons have failed to explain how an Allstate employee could provide facts necessary to rebut Allstate's summary judgment evidence pertaining to the shooting of Mr. Moore, *e.g.,* the Finley and Greeson Affidavits.

Third, the Riddles Affidavit suggests a continuance is necessary so that David Burton's mental condition at the time of the shooting can be assessed. However, as set forth above, the court has ruled that the intentional shooting of Mr. Moore is specifically excluded from coverage under the homeowner's policy regardless of David Burton's mental state at the time.  Therefore, a mental evaluation of David Burton does not provide a reason to delay the entry of summary judgment in this matter.

19

Finally, the Riddles Affidavit states that the Burtons cannot fully respond to the Greeson Affidavit since "Doug Greeson has refused to speak to the undersigned." As noted by Allstate, however, the Burtons have not detailed any steps taken to subpoena Mr. Greeson under Fed. R. Civ. P. 45 to compel his attendance at a deposition in this matter. In addition, the Riddles Affidavit implies that the Burtons desire to speak to Mr. Greeson regarding his identification of David Burton "as the person who shot and killed Timothy Moore after not being able to do so the day of the shooting." As addressed by the court earlier, the Burtons' "misidentification" theory does not provide a basis for denying summary judgment to Allstate. The court notes that the Riddles Affidavit is silent as to any efforts by the Burtons to depose any other identified eyewitnesses to the shooting, including Mr. Finley, whose affidavit was relied upon by Allstate in its summary judgment motion. Under the circumstances, the court finds that the Burtons have failed to provide the court with sufficient grounds to grant a Rule 56(f) continuance or stay in this matter and their request for a continuance or stay is denied.

For the reasons stated above, the court concludes that Allstate's Motion for Summary Judgment should be granted against the Burtons in its entirety. The policy provides no coverage and no duty to defend and indemnify David Burton in connection with the fatal shooting of Timothy Moore.

Turning to Allstate's related Motion for Leave to Supplement Summary

Judgment Motion to Address New Demand by Sandra Burton, the court finds that

this Motion should be denied.  In this motion, Allstate advises the court that

Sandra Burton has been added as a party in the underlying Cleveland County

civil lawsuit.  According to Allstate, the Amended Petition now alleges that Sandra

Burton was negligent in allowing David Burton to keep and maintain weapons

when she knew or should have known that he had mental stability problems.

Demand has apparently been made to Allstate for defense and indemnification

related to the new claims against Sandra Burton.  Allstate's position is that

Oklahoma law is clear that the policy does not provide coverage for such a claim.

The Burtons have objected to Allstate's supplementation of its dispositive motion,

stating that the proper course would be to treat Allstate's motion as a Motion to

Amend its Complaint.  The court agrees with the Burtons that Allstate's mere

supplementation of its motion for summary judgment, however expedient it may

be, is not the proper way to bring the new issue and/or party properly before the

court in this declaratory judgment action.  The allegations concerning the

amendments of the underlying civil lawsuit should be presented to the court in the

proper pleadings, rather than as contested arguments in briefs relating to

supplementations of pending motions.  With the court's granting of Allstate's

Motion for Summary Judgment in this order, however, amendment of the

Complaint at this time would also not be appropriate.  Therefore, it appears that

Allstate must file a second declaratory judgment action regarding the claims against Sandra Burton.

In summary, and in light of the above rulings, the court finds as follows:

• **Allstate's Motion for Summary Judgment [Doc. No. 36] is GRANTED.**

• **The Burton's alternative motion for a stay or continuance pursuant to Fed. R. Civ. P. 56(f), contained in their Response to Allstate's Motion for Summary Judgment, [Doc. No. 39] is DENIED.**

• **Allstate's Motion for Leave to Supplement Summary Judgment Motion to Address New Demand by Sandra Burton [Doc. No. 52] is DENIED.**

• **In view of the court's order granting summary judgment to Allstate, the following motions are MOOT:  Allstate's Motion to Quash Deposition Notice [Doc. No. 28]; Allstate's Motion in Limine to Exclude the Testimony of Expert Witness Herman Jones and Evidence Regarding David Burton's Mental Illness [Doc. No. 49]; Allstate's Motion in Limine to Exclude all Witnesses and Exhibits Not Included on Defendants' Final Witness and Exhibit Lists [Doc. No. 50]; Allstate's Motion to**

**Strike Defendants David and Sandra Burton's Exhibits 12, 13, and 14.**

Finally, the court notes that no new counsel has entered an appearance on behalf of the Burtons since the date of the court's order allowing the withdrawal of counsel.[5]  Mrs. Burton, however, sent a letter in response to the court's order directly to the court's chambers.  The clerk is directed to include Mrs. Burton's letter in the case file for informational purposes and to send a copy of this order to her at the address shown in her letter to the court.

It is so ordered this 2nd day of June, 2005.

*Tim Leonard*

TIM LEONARD
United States District Judge

---

[5]       It should be noted that all of the above motions addressed by this order were fully briefed prior to the withdrawal of the Burtons' counsel.